ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - X

                                     :    **SEALED SUPERSEDING**
                                          **INDICTMENT**
UNITED STATES OF AMERICA             :
                                          S2 19 Cr. 462 (___)
        - v. -                       :

                                     :

HABEEB AUDU,                         :
    a/k/a "Dickson,"                      USDC SDNY
ALADE KAZEEM SODIQ,                  :    DOCUMENT
    a/k/a "Eluku,"                        ELECTRONICALLY FILED
ABDULAI KENNEDY SAAKA,               :    DOC #:_____
    a/k/a "Kenny,"                                   JUN 2 5 2019
DOMINIC FRANCIS LABIRAN,             :    DATE FILED:_____

                                     :
        Defendants.
                                     :

- - - - - - - - - - - - - - - - - - X

### OVERVIEW OF THE SPOOFING SERVICE SCHEME

        1.    Since in or about October 2017, the Federal

Bureau of Investigation ("FBI") has been investigating an

internationally coordinated scheme to defraud various financial

institutions, including banks insured by the Federal Deposit

Insurance Corporation ("FDIC"), at least one of which is

headquartered in New York, New York (the "Scheme"). Among other

things, as part of the Scheme, HABEEB AUDU, a/k/a "Dickson," and

ALADE KAZEEM SODIQ, a/k/a "Eluku," the defendants, and others

known and unknown, unlawfully accessed and conducted financial

transactions using individuals' bank accounts without the

legitimate account-holders' knowledge or authorization.  As part

of the Scheme, certain of the defendants, as well as others

known and unknown (collectively with the defendants named herein, the "Participants"), placed thousands of calls to various FDIC-insured banks during which the Participants held themselves out as legitimate accountholders of particular targeted bank accounts, including accounts held by individuals who reside in the Southern District of New York; provided the name, date of birth, and/or other information related to those targeted accounts; engaged the services of a particular business that allows an individual to disguise the true telephone number from which the Participants would call the affected banks (the "Spoofing Service"); used the Spoofing Service to create the appearance that a Participant's call was being placed from a phone number attached to that targeted account, thereby creating the appearance that the Participant was, in fact, the account's legitimate accountholder; and directed the bank to conduct financial transactions, including initiating wire transfers and sending "replacement" debit cards to the caller, without the permission or authority of the legitimate accountholder.

2.    The Spoofing Service offered additional identity-concealing features, such as allowing Participants to "mask" a calling Participant's actual voice by modulating the calling Participant's voice to sound more consistent with the legitimate

2

accountholder's voice.  For example, using a particular phone number a male Participant could have his voice electronically altered to sound like a female caller with the goal of convincing a representative at that bank that the caller was a female accountholder with a pre-existing account at said bank and with a pre-existing phone number linked to that account.

3.    One of the banks targeted by the Scheme, an FDIC-insured bank headquartered in New York, New York ("Bank-1"), used less stringent security protocols for authorizing financial transactions over the telephone when a purported accountholder called from a telephone number already on-file for that accountholder's account. For example, such a caller would be required to provide less authenticating and/or personal identifying information than a purported accountholder calling Bank-1 from a number that is not linked to the account.  Thus, by using the Spoofing Service to create the appearance that they were calling from a number linked to a particular account (thereby "spoofing" the accountholder's telephone number already on file with the affected bank), the Participants could more easily direct their affected banks to perform unlawful and unauthorized financial transactions while possessing

3

comparatively less personal identifying information about the legitimate accountholder.

4. Once the Participants gained access to the targeted accounts, the Participants commonly initiated transfers of funds from savings accounts into linked checking accounts and then requested that the bank mail a debit card to a foreign address. Once the debit card reached the address, the Participants used the debit cards to make purchases of high-value items in retail stores and on the internet, and were able to make larger purchases as a result of previously transferring funds to the checking account linked to the debit card.

## OVERVIEW OF THE BUSINESS COMPROMISE SCHEMES

5. Beginning in January 2019, one of the participants in the Spoofing Service Scheme ("CW-1"), who has agreed to cooperate with law enforcement, made a series of consensually recorded phone calls at the direction of law enforcement. Those called involved HABEEB AUDU, a/k/a "Dickson," and ALADE KAZEEM SODIQ, a/k/a "Eluku," the defendants, during which AUDU and SODIQ each stated, in substance and in part, that they were involved in separate schemes to defraud United States-based businesses and banks by means of business email compromises. For example, AUDU admitted

4

his involvement in a scheme to defraud an Ohio-based restaurant chain (the "Restaurant Victim"). The Restaurant Victim's bank records and email communications further show how AUDU and his co-conspirators defrauded the Restaurant Victim by sending the Restaurant Victim email communications in which the Restaurant Victim was falsely told that its vendor's payment details had changed and that payment for the next invoice should be made to a new bank account which was, in fact, controlled by AUDU and his co-conspirators. The Restaurant Victim then sent nearly $2 million to a bank account controlled by AUDU's co-conspirators, before the funds were quickly withdrawn from that account by means of wire transfers to other bank accounts, including wire transfers through the Southern District of New York.

6.    In a separate conversation, ALADE KAZEEM SODIQ, a/k/a "Eluku," the defendant, admitted his role in fraudulently moving the proceeds of a business email compromise scheme involving a North Carolina-based healthcare company (the "Healthcare Company Victim"). Similar to the Restaurant Victim, the Healthcare Company Victim received email communications indicating that its vendor's payment details had changed, and the Healthcare Company Victim subsequently sent more than $1 million to an account controlled by one of SODIQ's co-

5

conspirators. Bank records show that once the Healthcare Company
Victim sent the payment, the funds sent to the destination
account were quickly distributed to several other bank accounts,
including to an account at a second bank headquartered in the
Southern District of New York ("Bank-2").

7.    Upon learning about the schemes involving the
Restaurant Victim, and at the direction of law enforcement, CW-1
told HABEEB AUDU, a/k/a "Dickson," the defendant, that CW-1 was
involved in a scheme to fraudulently obtain moneys from a United
States-based business and that CW-1 needed several United States
bank accounts through which CW-1 and CW-1's "co-conspirators"
could launder the proceeds of that scheme.  AUDU agreed to
assist, and AUDU and another individual not charged herein ("CC-
1") sent CW-1 a photograph containing the account information
for a bank account (the "AUDU Account") through which CW-1 was
permitted to move the proceeds of his scheme in exchange for a
fee.    Law enforcement subsequently moved funds from a covert
account located in the Southern District of New York to the AUDU
Account, and the AUDU Account moved those funds into a second
law enforcement covert bank account, less AUDU's fee for the
transaction.

6

8. In a separate conversation, at the direction of law enforcement, CW-1 spoke to ALADE KAZEEM SODIQ, a/k/a "Eluku," the defendant, and, as CW-1 previously had with AUDU, described CW-1's involvement in a scheme to fraudulently obtain moneys from a United States-based business and of CW-1's need for several United States bank accounts through which CW-1 and CW-1's "co-conspirators" could launder the proceeds of that scheme. In that conversation, SODIQ agreed to provide bank accounts to CW-1, and introduced CW-1 to ABDULAI KENNEDY SAAKA, a/k/a "Kenny," and DOMINIC FRANCIS LABIRAN, the defendants. In the weeks that followed, CW-1 discussed with SODIQ, SAAKA and LABIRAN the scheme in which CW-1 was purportedly involved, CW-1's need for pass through United States bank accounts, and the fees payable to SAAKA and LABIRAN, which amounted to nearly 50% of any moneys sent through the accounts. Both SAAKA and LABIRAN provided accounts for CW-1's use (the "SODIQ Accounts") that were either in their respective names or over which they exercised control, including accounts at Bank-1 and Bank-2. Law enforcement subsequently moved funds from a covert account located in the Southern District of New York to the SODIQ Accounts, and the SODIQ Accounts moved those funds into a second

7

law enforcement covert bank account, less the fee for the transaction.

## STATUTORY ALLEGATIONS

### COUNT ONE
(Wire and Bank Fraud Conspiracy)

The Grand Jury charges:

9. The allegations contained in paragraphs 1 through 4 of this Indictment are hereby repeated, realleged and incorporated by reference, as if fully set forth herein.

10. From at least in or about 2013 through at least in or about December 2018, in the Southern District of New York and elsewhere, HABEEB AUDU, a/k/a "Dickson," and ALADE KAZEEM SODIQ, a/k/a "Eluku," the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit wire fraud in violation of Title 18, United States Code, Section 1343 and bank fraud in violation of Title 18, United States Code, Section 1344, to wit, the defendants conspired with individuals located in, among other locations, the United States, Italy, the United Kingdom, and the United Arab Emirates to fraudulently access bank accounts and conduct financial transactions using those bank accounts without the consent or authority of the accounts' legitimate owners, and did so through

8

the use of interstate wires, including interstate telephone calls.

11.   It was a part and an object of the conspiracy that HABEEB AUDU, a/k/a "Dickson," and ALADE KAZEEM SODIQ, a/k/a "Eluku," the defendants, and others known and unknown, would and did knowingly execute and attempt to execute a scheme and artifice to defraud financial institutions, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institutions, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

12.   It was a further part and an object of the conspiracy that HABEEB AUDU, a/k/a "Dickson," and ALADE KAZEEM SODIQ, a/k/a "Eluku," the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings,

signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
(Aggravated Identity Theft)

The Grand Jury further charges:

13. The allegations contained in paragraphs 1 through 4 of this Indictment are hereby repeated, realleged and incorporated by reference, as if fully set forth herein.

14. From at least in or about 2013 through at least in or about December 2018, in the Southern District of New York and elsewhere, HABEEB AUDU, a/k/a "Dickson," and ALADE KAZEEM SODIQ, a/k/a "Eluku," the defendants, knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, AUDU and SODIQ, the defendants, used, without lawful authority the names, social security numbers, dates of birth and other personal identifying information of other individuals in connection with the offense charged in Count One of this Indictment.

(Title 18, United States Code, Sections 1028A & 2.)

10

### COUNT THREE
(Conspiracy to Commit Money Laundering)

The Grand Jury further charges:

15.  The allegations contained in paragraphs 1 through 4 of this Indictment are hereby repeated, realleged and incorporated by reference, as if fully set forth herein.

16.  From at least in or about 2013 through at least in or about December 2018, in the Southern District of New York and elsewhere, HABEEB AUDU, a/k/a "Dickson," and ALADE KAZEEM SODIQ, a/k/a "Eluku," the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to violate the money laundering laws of the United States.

17.  It was a part and an object of the conspiracy that HABEEB AUDU, a/k/a "Dickson," and ALADE KAZEEM SODIQ, a/k/a "Eluku," the defendants, and others known and unknown, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such a financial transaction which in fact involved the proceeds of specified unlawful activity as defined in Title 18, United States Code, Sections 1956(c)(7)(A) & (B), to wit, the proceeds of a bank and wire fraud scheme to fraudulently obtain access to United States

11

bank accounts, in violation of Title 18, United States Code, Section 1343, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Section 1956(h).)

## COUNT FOUR
(Wire Fraud Conspiracy)

The Grand Jury further charges:

18. The allegations contained in paragraphs 1 through 5 of this Indictment are hereby repeated, realleged and incorporated by reference, as if fully set forth herein.

19. From at least in or about December 2018 through at least in or about April 2019, in the Southern District of New York and elsewhere, HABEEB AUDU, a/k/a "Dickson," the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit wire fraud in violation of Title 18, United States Code, Section 1343, to wit, AUDU conspired with another individual to defraud the Restaurant Victim as part of a business email compromise scheme.

12

20. It was a part and an object of the conspiracy that HABEEB AUDU, a/k/a "Dickson," the defendant, and others known and unknown, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349.)

## COUNT FIVE
(Conspiracy to Commit Money Laundering)

The Grand Jury further charges:

21. The allegations contained in paragraphs 1 through 5 of this Indictment are hereby repeated, realleged and incorporated by reference, as if fully set forth herein.

22. From at least in or about December 2018 through in or about April 2019, in the Southern District of New York and elsewhere, HABEEB AUDU, a/k/a "Dickson," the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree with others to violate the

13

money laundering laws of the United States.

23. It was a part and an object of the conspiracy that HABEEB AUDU, a/k/a "Dickson," the defendant, and others known and unknown, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such a financial transaction which in fact involved the proceeds of specified unlawful activity as defined in Title 18, United States Code, Sections 1956(c)(7)(A) & (B), to wit, the proceeds of the wire fraud targeting the Restaurant Victim, in violation of Title 18, United States Code, Sections 1343 and 1349, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Section 1956(h).)

## COUNT SIX
(Conspiracy to Commit Money Laundering)

The Grand Jury further charges:

24. The allegations contained in paragraphs 1 through 4 and 7 of this Indictment are hereby repeated, realleged and incorporated by reference, as if fully set forth herein.

14

25.    In or about February 2019, in the Southern District of New York and elsewhere, HABEEB AUDU, a/k/a "Dickson," the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to violate Title 18, United States Code, Section 1956(a)(3)(B).

26.    It was a part and an object of the conspiracy that HABEEB AUDU, a/k/a "Dickson," the defendant, and others known and unknown, willfully and knowingly, would and did conduct and attempt to conduct a financial transaction involving property represented by a person at the direction of, and with the approval of, a Federal official authorized to investigate and prosecute violations of Section 1956 of Title 18, United States Code, to be the proceeds of specified unlawful activity, to wit, the proceeds of a wire fraud scheme to fraudulently obtained moneys of United States-based businesses, in violation of Title 18, United States Code, Section 1343, with the intent to conceal and disguise the nature, the location, the source, the ownership, and the control of property believed to be the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(3)(B).

(Title 18, United States Code, Section 1956(h).)

15

## COUNT SEVEN
(Money Laundering)

The Grand Jury further charges:

27. The allegations contained in paragraphs 1 through 4 and 7 of this Indictment are hereby repeated, realleged and incorporated by reference, as if fully set forth herein.

28. In or about February 2019, in the Southern District of New York and elsewhere, HABEEB AUDU, a/k/a "Dickson," the defendant, would and did conduct and attempt to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, and property used to conduct and facilitate specified unlawful activity, to wit, the proceeds of a wire fraud scheme to fraudulently obtained moneys of United States-based businesses using interstate wires, in violation of Title 18, United States Code, Section 1343, with the intent to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of said specified unlawful activity.

(Title 18, United States Code, Sections 1956(a)(3)(B) and 2.)

16

## COUNT EIGHT
(Conspiracy to Commit Money Laundering)

The Grand Jury further charges:

29. The allegations contained in paragraphs 1 through 4, 6 and 8 of this Indictment are hereby repeated, realleged and incorporated by reference, as if fully set forth herein.

30. From at least in or about March 2019 through in or about June 2019, in the Southern District of New York and elsewhere, ALADE KAZEEM SODIQ, a/k/a "Eluku," ABDULAI KENNEDY SAAKA, a/k/a "Kenny," and DOMINIC FRANCIS LABIRAN, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to violate Title 18, United States Code, Section 1956(a)(3)(B).

31. It was a part and an object of the conspiracy that ALADE KAZEEM SODIQ, a/k/a "Eluku," ABDULAI KENNEDY SAAKA, a/k/a "Kenny," and DOMINIC FRANCIS LABIRAN, the defendants, and others known and unknown, willfully and knowingly, would and did conduct and attempt to conduct a financial transaction involving property represented by a person at the direction of, and with the approval of, a Federal official authorized to investigate and prosecute violations of Section 1956 of Title 18, United States Code, to be the proceeds of specified unlawful activity,

17

to wit, the proceeds of a wire fraud scheme to fraudulently

obtained moneys of United States-based businesses using

interstate wires, in violation of Title 18, United States Code,

Section 1343, with the intent to conceal and disguise the

nature, the location, the source, the ownership, and the control

of property believed to be the proceeds of said specified

unlawful activity, in violation of Title 18, United States Code,

Section 1956(a)(3)(B).

(Title 18, United States Code, Section 1956(h).)

## COUNT NINE
(Money Laundering)

The Grand Jury further charges:

32.    The allegations contained in paragraphs 1 through

4, 6 and 8 of this Indictment are hereby repeated, realleged and

incorporated by reference, as if fully set forth herein.

33.    From at least in or about March 2019 through in

or about June 2019, in the Southern District of New York and

elsewhere, ALADE KAZEEM SODIQ, a/k/a "Eluku," ABDULAI KENNEDY

SAAKA, a/k/a "Kenny," and DOMINIC FRANCIS LABIRAN, the

defendants, conducted and attempted to conduct a financial

transaction involving property represented to be the proceeds of

specified unlawful activity, and property used to conduct and

facilitate specified unlawful activity, to wit, the proceeds of

18

a wire fraud scheme to fraudulently obtained moneys of United States-based businesses using interstate wires, in violation of Title 18, United States Code, Section 1343, with the intent to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of said specified unlawful activity.

(Title 18, United States Code, Sections 1956(a)(3)(B) and 2.)

## FORFEITURE ALLEGATIONS

34.    As a result of committing the offense alleged in Count One of this Indictment, HABEEB AUDU, a/k/a "Dickson," and ALADE KAZEEM SODIQ, a/k/a "Eluku," the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

35.    As a result of committing the offense alleged in Count Three of this Indictment, HABEEB AUDU, a/k/a "Dickson," and ALADE KAZEEM SODIQ, a/k/a "Eluku," the defendants, shall forfeit to the United States, pursuant to Title 18, United

19

States Code, Section 982(a)(1), any and all property, real or personal, involved in the offense alleged in Count Three of this Indictment, and any property traceable to such property.

36. As a result of committing the offense alleged in Count Four of this Indictment, HABEEB AUDU, a/k/a "Dickson," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

37. As a result of committing the offenses alleged in Counts Five through Seven of this Indictment, HABEEB AUDU, a/k/a "Dickson," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real or personal, involved in the offense alleged in Counts Five through Seven of this Indictment, and any property traceable to such property.

38. As a result of committing the offenses alleged in Counts Eight and Nine of this Indictment, ALADE KAZEEM SODIQ,

20

a/k/a "Eluku," ABDULAI KENNEDY SAAKA, a/k/a "Kenny," and DOMINIC FRANCIS LABIRAN, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real or personal, involved in the offenses alleged in Counts Eight and Nine of this Indictment, and any property traceable to such property.

### Substitute Assets Provision

39.   If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third person;

c.   has been placed beyond the jurisdiction of the Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be subdivided without difficulty;
it is the intent of the United States, pursuant to Title 21, United States Code, Section 853 (p), and Title 28, United States

Code, Section 2461(c), to seek forfeiture of any other property

of the defendant up to the value of the forfeitable property.

> (Title 18, United States Code, Sections 981 & 982;
> Title 21, United States Code, Section 853; and
> Title 28, United States Code, Section 2461.)

FOREPERSON

GEOFFREY S. BERMAN
United States Attorney

22

Form No. USA-33s-274 (Ed. 9-25-58)

---

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA**

**- v. -**

**HABEEB AUDU, a/k/a "Dickson,"
ALADE KAZEEM SODIQ, a/k/a "Eluku,"
ABDULAI KENNEDY SAAKA, a/k/a "Kenny,"
and
DOMINIC FRANCIS LABIRAN,**

**Defendants.**

---

**SEALED SUPERSEDING INDICTMENT**

S2 19 Cr. $\frac{462}{}$(___)

(18 U.S.C. §§ 1028A, 1349, 1956, and
2.)

_____
Foreperson

GEOFFREY S. BERMAN
United States Attorney.

---

- TRUE BILL / SEALED SUPERSEDING INDICTMENT
- 6/25/19      MAG. JUDGE ROBERT W. LEHRBURGER